IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

EDWARD NATHANIEL REESE,          )
                                 )
            Petitioner,          )
                                 )
      v.                         ) 1:13CV149
                                 )
BOBBY W. MARSHALL,               )
                                 )
            Respondent.          )

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner Edward Nathaniel Reese, a prisoner of the State of North Carolina, brings a Petition [Doc. #1] seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which Respondent opposes with a Motion for Summary Judgment [Doc. #9]. According to the Petition, on April 2, 2012, in the Superior Court of Guilford County, Petitioner pled guilty to two counts of larceny after breaking and entering after having attained the status of a habitual felon. (Petition, §§ 1-6.) He received a sentence of 132 to 168 months of imprisonment. (Id., § 3.) Petitioner did not pursue a direct appeal, but did later file a Motion for Appropriate Relief (MAR) in the North Carolina Court of Appeals. After that court dismissed the MAR, Petitioner filed his current Petition in this Court. Respondent then filed his Motion for Summary Judgment.

## Petitioner's Claims

Petitioner's first claim for relief alleges that the trial court violated his rights by failing to order a third competency evaluation, failing to hold a competency hearing after the first two evaluations, and accepting his guilty plea despite questions regarding his competency.

(Petition, § 12, Ground One.) Petitioner's second claim alleges that the State could not prove the elements of his larceny conviction. (Id., Ground Two.) His third claim then argues that, because the State could not prove larceny, it also could not charge his status as a habitual felon and sentence him accordingly. (Id., Ground Three.) Finally, he alleges that he received ineffective assistance of counsel because his attorney did not spend sufficient time on the case and did not fully investigate mitigating evidence before sentencing or present that evidence at sentencing. (Id., Ground Four.)

## Exhaustion

Respondent asserts that, because Petitioner did not present his MAR to the trial court and then proceed to the North Carolina Court of Appeals only after the trial court denied relief, his claims are not exhausted as required by 28 U.S.C § 2254(b). Nevertheless, Respondent notes that the Court may still reject the claims under § 2254(b)(2) and that redirecting Petitioner to state court to exhaust his claims before returning to this Court would only serve to unnecessarily delay matters. Having reviewed the pleadings, the Court agrees and will address the merits of Petitioner's claims without addressing exhaustion further.

## Discussion

Petitioner's first claim for relief contends that the trial court erred in a number of ways in handling the issue of Petitioner's competency to proceed. Petitioner states in his Petition that the trial court initially ordered an examination, which was conducted at Dorothea Dix Hospital and resulted in a finding that the examiner could not determine whether or not he was competent to proceed. Petitioner contends that this resulted in a

second examination at Central Prison, where the examiner only examined him for ten minutes before issuing a report that he was competent to stand trial. (Petition, § 12, Ground One.) Petitioner raises procedural due process claims by alleging that the trial court did not order a third competency examination or conduct a competency hearing. He also raises a substantive due process claim alleging that his guilty plea is invalid because he was not competent to enter that plea.

As the United States Court of Appeals for the Fourth Circuit has explained regarding competency claims:

> The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting mentally incompetent defendants. Pate v. Robinson, 383 U.S. 375, 384-86, 86 S.Ct. 836, 15 L. Ed. 2d 815 (1966). The test for determining competency is whether a defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as a factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L. Ed. 2d 824 (1960). Competency claims can raise issues of both procedural and substantive due process.
>
> For example, a defendant may make a procedural competency claim by alleging that the trial court failed to hold a competency hearing after the defendant's mental competency was put in issue. To prevail, the defendant must establish that the trial court ignored facts raising a "bona fide doubt" regarding the defendant's competency to stand trial. Pate, 383 U.S. at 384-86, 86 S.Ct. 836. Even if a defendant is mentally competent at the beginning of the trial, the trial court must continually be alert for changes which would suggest that he is no longer competent. Drope v. Missouri, 420 U.S. 162, 180, 95 S.Ct. 896, 43 L. Ed. 2d 103 (1975). Although there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed," proof "of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant." Id.
>
> On the other hand, a defendant may make a substantive competency claim by alleging that he was, in fact, tried and convicted while mentally incompetent. Pate, 383 U.S. at 384-86, 86 S.Ct. 836; Dusky, 362 U.S. at 402, 80 S.Ct. 788. In

> contrast to a procedural competency claim, however, a defendant raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his incompetency by a preponderance of the evidence. Burket, 208 F.3d at 192. "'Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.'" Id. (quoting United States ex rel. Foster v. DeRobertis, 741 F.2d 1007, 1012 (7th Cir.1984)). Similarly, "neither low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial." Burket, 208 F.3d at 192.

Walton v. Angelone, 321 F.3d 442, 459-60 (4th Cir. 2003).

Petitioner first claims that the trial court should have ordered a third mental evaluation. He mainly bases this contention on his allegation that the first evaluation was not definitive and that the second was deficient or biased. These allegations misrepresent the record, however. The first examination was conducted, not at Dorothea Dix Hospital as Petitioner states, but at the Guilford Center in Guilford County, North Carolina by a Local Certified Forensic Examiner. The report from that examination stated that Petitioner previously received services for schizoaffective disorder and that his "presentations and responses" during the exam were consistent with that disorder. (Respondent Brief [Doc. #10], Ex. 5.) However, it found that Petitioner did have the capacity to proceed to trial, that he understood the legal system and could describe the roles of persons in the court, that he understood the possible outcomes of the proceedings, and that he had the ability to work rationally with his defense attorney. (Id.) It recommended that Petitioner continue to receive psychiatric services, including medication, as the case proceeded, but found that he had the capacity to proceed. (Id.) The report flatly did not, as Petitioner states, fail to determine whether or not he was competent to proceed.

4

The second examination was conducted at Central Prison by an examiner from Central Regional Hospital in Butner, North Carolina.[1] The examiner reviewed Petitioner's prior records from six other sources, including four other hospitals. (Id., Ex. 8.) The report sets out Petitioner's history in some detail and notes that he was previously diagnosed as malingering, i.e., faking or exaggerating his psychiatric symptoms. Following an interview in which Petitioner gave conflicting answers and reported "atypical" symptoms, the examiner gave Petitioner a test on which a score of "6 or more out of 25 indicate[s] exaggeration or malingering." (Id. at 6.) Petitioner scored 21 out of 25. (Id.) The examiner then concluded that Petitioner was malingering all of his symptoms and that he did not have "any psychotic disorder, mood disorder, or cognitive impairments." (Id. at 7.) He was, therefore, determined to be competent to proceed, although the report warned that Petitioner would likely continue to falsely report memory deficits and/or hallucinations, but could participate in courtroom procedures if he chose to do so. (Id.)

Given the true contents of the first two reports, there is absolutely no reason why the trial court would have ordered a third examination on Petitioner's competency. One report concluded that Petitioner was mentally ill, but able to proceed, while the other, which included actual testing, indicated that he was simply faking his symptoms. Moreover, Petitioner points to no evidence that could have been used to successfully combat these two

---

[1] Petitioner states that there was an inherent bias against him because the evaluation was conducted at Central Prison. It is not clear why the location would create any bias, particularly given that the examiner came from a clinical setting outside the prison. Further, courts reject such claims of inherent bias. See United States v. Zhou, 428 F.3d 361, 379-80 (2d Cir. 2005); United States v. Thornberg, 676 F.3d 703, 707 (8th Cir. 2012).

very clear reports. Further, as discussed next, the transcripts from Petitioner's guilty plea indicate that the trial court did consider Petitioner's competency at the plea hearing and concluded that he was competent to proceed at that time. The trial court did not ignore any "bona fide doubts" in proceeding without a further examination or hearing.

Petitioner's substantive claim alleges that he was actually not competent to plead guilty at the time of his plea. In his Petition, he relies mainly on his history of mental illness diagnoses to make this argument. In his Response Brief [Doc. #16], Petitioner points to the transcript from his plea hearing in an attempt to substantiate his claim. However, a review of that transcript (Respondent's Brief, Ex. 12) does not "demonstrate his incompetency by a preponderance of the evidence" as required by Walton, supra. In fact, just the opposite is true. The judge at the plea hearing thoroughly questioned Petitioner concerning his fitness to proceed, his understanding of the charges, his relationship with his defense attorney, and his understanding of the plea bargain. Petitioner responded appropriately to each question. He did indicate that he took medication for mental problems and that he had difficulties at times with his attorney, but also reported that he was "all right" at the time of the plea and satisfied with counsel at that time. Finally, he consulted with his attorney several times during the hearing before answering the judge's questions, but always gave appropriate answers after the consultations. This demonstrates that he was competent to seek appropriate advice and understand the proceedings with the help of counsel. Given the two psychiatric evaluations and the plea hearing itself, there is no evidence, much less a

preponderance of the evidence, to support Petitioner's contention that he was not competent to plead guilty. His first claim for relief should be denied in its entirety.

Petitioner's second and third claims for relief quickly fail. Petitioner alleges that the State could not prove that he committed larceny and that, because it could not prove larceny, it could not indict and sentence him as a habitual felon. However, Petitioner pled guilty to the larceny charges and to having attained habitual felon status. His guilty plea not only waives any non-jurisdictional defects in the indictments, Tollett v. Henderson, 411 U.S. 258, 265 (1973), but also establishes the elements of the offenses and negates the need for further proof by the prosecution, Boykin v. Alabama, 395 U.S. 238, 243 n.4 (1969). Both Petitioner's second and third claims fail and should be denied.

Finally, Petitioner claims that he received ineffective assistance of counsel because his attorney did not spend much time on his case, did not properly investigate mitigating evidence prior to sentencing, and did not properly present such evidence at sentencing. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), abrog'n on other grounds recog'd, Yeatts v. Angelone, 166 F.3d 255 (4th

Cir. 1999). With respect to the first prong of the Strickland analysis, the petitioner bears the

7

burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). With respect to the second prong, to establish prejudice, Petitioner must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

Petitioner's allegations of ineffective assistance are entirely conclusory. The amount of time spent on the case does not, in and of itself, satisfy Strickland. Instead, Petitioner must point to some key piece of evidence or meritorious argument not discovered or presented. Petitioner utterly fails to do this. Further, as Respondent notes in his brief, Petitioner's attorney did argue a number of points in favor of mitigation at sentencing. (Respondent's Brief, Ex. 12 at 21-23.) Petitioner points to nothing more that his attorney could have done to affect the final sentence. His ineffective assistance claim should also be denied.

IT IS THEREFORE RECOMMENDED that Respondent's Motion for Summary Judgment [Doc. #9] be granted, that the Petition [Doc. #1] be denied, and that this action be dismissed.

This, the 8th day of September, 2014.

/s/ Joi Elizabeth Peake
United States Magistrate Judge